UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

DARIO COLON and MICHAEL ST. JOHN,

                        Plaintiffs,

           v.

THE CITY OF NEW YORK, LIEUTENANT
PATRICK RYAN, DETECTIVE ANDREW
PRENDERGAST (Shield #3769), DETECTIVE
WILLIE JOHNSON, DETECTIVE CHRISTOPHER
WARD and POLICE OFFICERS JOHN DOE 1-5,

                        Defendants.

**MEMORANDUM & ORDER**
11-CV-0173 (MKB)

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Dario Colon and Michael St. John brought the above-captioned action against

Defendants City of New York, Lieutenant Patrick Ryan, Detective Andrew Prendergast,

Detective Willie Johnson, Detective Christopher Ward and Police Officers John Doe 1–5

pursuant to 42 U.S.C. § 1983 and New York state law for false arrest and imprisonment,

malicious prosecution, unlawful search, failure to intervene, denial of their rights to a fair trial

and municipal liability.  (Docket Entry No. 1.)  Plaintiffs withdrew their municipal liability and

state law false arrest claims.  (Minute Entry dated Nov. 30, 2012.)  Defendants subsequently

moved for partial summary judgment seeking to dismiss Plaintiffs' claims for malicious

prosecution, unlawful search, failure to intervene and denial of the right to a fair trial, as well as

dismissing Johnson and Ward as Defendants.  At oral argument on November 8, 2013, the Court

granted Defendants' motion in part, denied it in part and reserved decision in part.  The Court

denied summary judgment as to Plaintiffs' malicious prosecution and denial of fair trial claims

against Ryan, Prendergast and Johnson, and failure to intervene claim as to all Defendants.  The

Court granted summary judgment on Plaintiffs' unlawful search claim against Johnson.  The

Court also dismissed Plaintiffs' malicious prosecution and denial of fair trial claims against

Ward and Plaintiffs' unlawful search claim against Ryan, Prendergast and Ward because they

were abandoned by Plaintiffs.  (Minute Entry dated Nov. 8, 2013.)  The Court reserved decision

on Defendants' motion for summary judgment as to Ward and Johnson on the basis of the

collective knowledge doctrine in view of Defendants' request to submit additional briefing on

the issue.[1]  (*Id.*)  For the reasons set forth below, the Court denies Defendants' motion for

summary judgment as to Ward and Johnson on the basis of the collective knowledge doctrine.

### I.  Factual Background

#### a.  Events leading to Plaintiffs' January 14, 2008 arrests

On January 14, 2008, Ryan, Prendergast, Johnson and Ward were on patrol.  (Def. 56.1

¶¶ 1–2; Pl. 56.1 ¶¶ 1–2.)  Ryan and Prendergast were patrolling together in one vehicle, and

Johnson and Ward were assigned to a second vehicle known as the prisoner van.  (Def. 56.1 ¶ 1;

Pl. 56.1 ¶ 1.)  Ryan was the supervisor.  (Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2.)  At approximately 7:00

p.m., Ryan and Prendergast were in their car patrolling in the vicinity of Sheffield and Livonia

Avenues in Brooklyn.  (Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.)

According to Defendants, while at the corner of Sheffield and Livonia Avenues, Ryan

and Prendergast observed Plaintiffs take turns walking to a vehicle parked nearby, pick up an

object from the rear wheel well of the vehicle, put the object in their waistbands, walk to the

street corner, return to the vehicle and return the object to the rear wheel well of the vehicle.

---

[1]  In addition, the Court directed Plaintiffs to inform the Court whether they wished to
proceed with their failure to intervene claims against all Defendants, and Defendants to respond
by addressing whether Plaintiffs can present alternate legal theories to the jury — that
Defendants were liable *either* for direct participation in the deprivation of Plaintiffs'
constitutional rights *or* for their failure to intervene therein — or whether Plaintiffs must select
one legal theory for presentation to the jury.  (Minute Entry dated Nov. 8, 2013.)

(Def. 56.1 ¶ 4; Ryan Dep. 64:9–65:6, 73:9–20.)  Plaintiffs dispute that they performed these acts. (Pl. 56.1 ¶ 4.)

While Ryan and Prendergast were observing Plaintiffs, Johnson and Ward were three or four blocks away.  (Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.)  Ryan telephoned Johnson and told him of a possible investigation into two individuals who were "going back and forth from messing around near a car tire."[2]  (Ryan Dep. 78:18–21; Johnson Dep. 17:14–17, 24:13–25:1.)  Ryan told Johnson to come to the Sheffield and Livonia area, (Johnson Dep. 17:3–7), and Johnson instructed Ward, who was driving, to proceed to that area, (Ward Dep. 5:2–11).  Ward understood that they were going to the location "because we were conducting an investigation," (*id.* at 6:5–9), however when asked if there was "any particular reason why [he] w[as] instructed to report to that particular location at that time," Ward did not remember, (*id.* at 6:10–12).  Once Johnson and Ward were nearby, Ryan told Johnson to move in, but did not tell him why. (Johnson Dep. 19:7–25.)  Johnson and Ward stopped Plaintiffs and interviewed them, asking for pedigree information.  (Ward Dep. 6:23–8:6.)

### b.   Recovery of firearm and arrest of Plaintiffs

According to Defendants, once Plaintiffs were stopped, Ryan instructed Prendergast to walk over to the vehicle and Prendergast recovered a firearm from the top of a rear tire.  (Def. 56.1 ¶ 8.)  Plaintiffs contend that Defendants searched for approximately five to seven minutes in the vicinity of Sheffield and Livonia Avenues before showing Colon a firearm.  (Pl. 56.1 ¶ 8.)

---

[2]   In Defendants' 56.1 Statement they assert that "[b]efore Detectives Johnson and Ward moved in to help stop [P]laintiffs, Lieutenant Ryan informed *them* that [P]laintiffs were being stopped because they were going back and forth 'messing around' near the tire of an SUV," citing to Johnson's deposition testimony.  (Def. 56.1 ¶ 7 (citing Johnson Dep. 24:13–25:5 (emphasis added)).)  Plaintiffs responded that they did "not dispute that the defendant Johnson testified as set forth."  (Pl. 56.1 ¶ 7.)  Johnson only testified as to what Ryan told him, however, and did not address whether this information was also conveyed to Ward.  (*See* Johnson Dep. 24:13–25:5.)

Plaintiffs did not observe the recovery of the firearm. (Def. 56.1 ¶ 9; Pl. 56.1 ¶ 9.) Plaintiffs assert that Johnson, not Prendergast, recovered the weapon. (Pl. 56.1 ¶ 10; Pl. Opp. 11–12.) According to Colon, the officer who recovered the weapon was African-American and was not present at his trial. (Colon Dep. 203:15–21; 181:4–182:4.) Prendergast testified at Colon's trial. (Prendergast Dep. 115:15–19.) Counsel for Defendants confirmed at oral argument that Prendergast and Johnson were the African-American officers involved in Plaintiffs' arrest. (Oral Arg. Tr. 32:8–14.)

Prendergast was the arresting officer and he approached and "cuffed" Plaintiffs. (Ward Dep. 8:5–13; Def. 56.1 ¶ 10.) At the time Plaintiffs were handcuffed, Ward did not have any knowledge of why Plaintiffs were being arrested, and had not seen Prendergast recover a weapon nor had he been shown a weapon. (Ward Dep. 8:10–24.) Ward did not personally observe the Plaintiffs engage in any unlawful acts. (*Id.* at 4:21–23.) At some point in time Johnson received information about Plaintiffs being in possession of a firearm from another officer, but neither Johnson nor Ward had observed Plaintiffs in possession of a firearm. (Def. 56.1 ¶ 11.)

Following the arrest of Plaintiffs, Johnson prepared the arrest reports, which state that "at t/p/o [time place occurrence] deft was observed with apprehended other [sic] in possession of a loaded firearm." (Def. Exs. 8, 9.) Johnson admits that this information "might be inaccurate, because I don't believe anybody seen them with the gun." (Johnson Dep. 43:3–22.) Johnson also prepared a complaint report in which he stated that "at t/p/o [time place occurrence] defendants w[]ere observed placing a loaded firearm on [the] tire of a[n] automobile." (Def. Ex. 10.) In the arrest reports, Johnson wrote that the manufacturer of the firearm recovered at the scene was "American Arms Inc." (Def. Exs. 8, 9.) Photographs of the weapon show that it is stamped "N.E.F. Co., Inc." and "H & R Mag," (Def. Ex. 12), and the "Evidence Collection Team

Report," and two "Request(s) for Laboratory Examination Reports" prepared following Plaintiffs' arrest describe the weapon as an "H & R Mag.," (Def. Exs. 13, 14).

### c. Plaintiffs' indictments and criminal trials

Plaintiffs were indicted by a Grand Jury for Criminal Possession of a Weapon in the Second and Fourth Degrees. (Def. 56.1 ¶ 12, 15; Pl. 56.1 ¶ 12, 15.) On October 4, 2010, following a criminal trial, St. John was found "not guilty" as to the charges of criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. (Def. Ex. 19.) In a separate trial, Colon was found "not guilty" as to the charges of criminal possession of a weapon in the second degree and criminal possession of a weapon in the fourth degree. (Def. Ex. 20.)

## II. Relevant History of Proceeding

The Court heard oral arguments on Defendants' motion for partial summary judgment on November 8, 2013. (Minute Entry dated Nov. 8, 2013.) The Court denied summary judgment on Plaintiffs' malicious prosecution and denial of fair trial claims against Ryan, Prendergast and Johnson. The Court found that, based on the evidence in the record, a reasonable jury could find that false information was provided to the prosecutor resulting in a violation of Plaintiffs' constitutional rights.

The Court denied summary judgment on Plaintiffs' failure to intervene claim as to all Defendants, finding that when construed in the light most favorable to Plaintiffs, there was sufficient evidence in the record to support the claim.

The Court granted summary judgment on Plaintiffs' unlawful search claim against Johnson based on the lack of evidence in the record that Johnson participated in the unlawful search alleged by St. John.

The Court also dismissed Plaintiffs' malicious prosecution and denial of fair trial claims against Ward and their unlawful search claim against Ryan, Prendergast and Ward, because Plaintiffs abandoned those claims.

The Court reserved decision on Defendants' motion for summary judgment as to Ward and Johnson on the basis of the collective knowledge doctrine, and granted Defendants' request to submit additional briefing on the doctrine. Defendants submitted supplemental arguments and legal authority on November 22, 2013, (Docket Entry No. 47 ("Def. Ltr.")), and Plaintiffs responded on December 6, 2013, (Docket Entry No. 49 ("Pl. Ltr.")). Defendants were only granted leave to submit additional briefing on the collective knowledge doctrine. In their supplemental submission, Defendants submitted additional briefing in support of their motion for summary judgment as to Plaintiffs' failure to intervene claim, which the Court had already decided at oral argument. (Def. Ltr. 2–3.) Defendants also, for the first time, moved for summary judgment as to Johnson and Ward on the ground that they are entitled to qualified immunity. (*Id.* at 3–4.)

## III. Discussion

### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Bronzini v. Classic Sec., L.L.C.*, --- F. App'x ---, ---, 2014 WL 943933, at *1 (2d Cir. Mar. 12, 2014); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013); *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*,

444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*  The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.  Collective Knowledge Doctrine

Defendants argue that all claims against Johnson and Ward should be dismissed on the basis of the collective knowledge doctrine, because Johnson and Ward stopped Plaintiffs and assisted in Plaintiffs' arrest based on information provided to them by Ryan and Prendergast regarding Plaintiffs' connection to the weapon.[3]  (*See* Def. Mem. 6–7; Def. Ltr. 2.)  Plaintiffs argue that at the time Ward participated in Plaintiffs' arrests, he did so based on instructions from Ryan and/or Prendergast and he did not know why Plaintiffs were being arrested and had not observed them engage in any unlawful acts, and therefore he cannot rely upon the collective knowledge doctrine.  (Pl. Opp. 11; Pl. Ltr. 2.)  Plaintiffs argue that Johnson cannot be dismissed

---

[3]  Although Defendants in their supplemental submission state that they "supplement their [summary judgment] motion to argue that: 1) Detective Willie Johnson should be dismissed as a defendant . . . under the collective knowledge . . . and 2) Detective Ward should be dismissed as a defendant under the failure to intervene theory," (Def. Ltr. 1), omitting any reference to dismissing Ward based on the collective knowledge doctrine, this appears to have been an oversight as Defendants argue later in their submission that the doctrine shields *both* Johnson and Ward, (*id.* at 2), and Defendants also argued in their motion for summary judgment that both Johnson and Ward should be dismissed on the basis of the collective knowledge doctrine, (*see* Def. Mem. 6–7).

based on the collective knowledge doctrine because Johnson's involvement in Plaintiffs' arrest is a disputed issue of fact. (Pl. Opp. 11–12.)

The collective knowledge doctrine provides that "[t]he existence of probable cause need not be assessed on the basis of the knowledge of a single officer," and allows for permissible arrest "where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (citations omitted); *see also United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001); *Spears v. City of New York*, No. 10-CV-03461, 2012 WL 4793541, at *6 (E.D.N.Y. Oct. 9, 2012). The doctrine "recognizes that, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." *Id.* (citations and internal quotation marks omitted); *see also Colon*, 250 F.3d at 135; *Zaniewska v. City of New York*, No. 11-CV-2446, 2013 WL 3990751, at *5 (E.D.N.Y. Aug. 5, 2013). "The basis of the doctrine is that officers must be able to assume that the information conveyed by their colleagues is accurate and reliable in order for law enforcement to operate effectively." *Golphin v. City of New York*, No. 09-CV-1015, 2011 WL 4375679, at *2 (S.D.N.Y. Sept. 19, 2011) (citing *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003)); *see also id.* at *3 ("Requiring [an arresting officer] to make an independent determination of probable cause would defeat the policy underlying the collective knowledge doctrine.").

In order for the collective knowledge doctrine to apply to actions taken by an officer, there must have been some communication between the officers involved. *See United States v.*

*Cruz*, 834 F.2d 47, 51 (2d Cir. 1987) ("The determination of whether probable cause to arrest exists can be based on the collective knowledge of all of the officers involved in the surveillance efforts because the various law enforcement officers in this investigation were in communication with each other."); *Toliver v. City of New York*, No. 10-CV-3165, 2012 WL 7782720, at *6 (S.D.N.Y. Dec. 10, 2012) ("The [collective knowledge] doctrine applies if the officers involved are in communication with each other."), *report and recommendation adopted*, No. 10-CV-3165, 2013 WL 1155293 (S.D.N.Y. Mar. 21, 2013); *Wong v. Yoo*, 649 F. Supp. 2d 34, 60 n.11 (E.D.N.Y. 2009) ("[*S*]*ome* amount of communication between officers is necessary in order for a second officer's reliance on the first officer's knowledge to be reasonable."); *Celestin v. City of New York*, 581 F. Supp. 2d 420, 430 n.6 (E.D.N.Y. 2008) ("The collective knowledge doctrine also requires that the officers were in communication with each other.").

In addition, in order to be insulated from liability by the collective knowledge doctrine, the arresting officer must have acted reasonably in relying on the information communicated to him.[4] *See Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 128 (2d Cir. 2009) ("[W]hether probable cause exists does not depend on the accuracy of the fellow officer's observations, but rather whether it was reasonable for the arresting officer to rely on them." (citing *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994))); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When making a probable cause determination, police officers are

---

[4]  Although the collective knowledge doctrine may insulate the arresting officer from liability, it cannot insulate an otherwise illegal arrest from challenge.  *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) ("[P]olice officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause.  Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."); *Walczyk v. Rio*, 496 F.3d 139, 164 (2d Cir. 2007) (same) (quoting *Whiteley*, 410 U.S. at 568).

entitled to rely on the allegations of fellow police officers.  Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful.  The determination of probable cause does not turn on whether the fellow agent's observations were accurate, but on whether the arresting agent was reasonable in relying on those observations." (alterations and internal quotation marks omitted) (citing *Bernard*, 25 F.3d at 103)); *Golphin*, 2011 WL 4375679, at *2 (Courts in this Circuit have interpreted the collective knowledge doctrine to "shield[] an arresting officer from liability for false arrest if the officer relies on a fellow officer who vouches for probable cause . . . .  When the collective knowledge doctrine applies, the proper inquiry is whether the arresting officer acted reasonably, as opposed to whether probable cause actually existed or the vouching officer acted reasonably," and "[i]n a chain of communication between officers, responsibility for the accuracy of probable cause remains with the officer that provided the affirmation, not the arresting officer." (citations omitted)); *see also Ortiz v. Vill. of Monticello, N.Y.*, No. 06-CV-2208, 2012 WL 5395255, at *8 (S.D.N.Y. Nov. 2, 2012) ("[P]olice officers are entitled to rely on the allegations of fellow police officers." (citation and internal quotation marks omitted)); *Hewitt v. City of New York*, No. 09-CV-214, 2012 WL 4503277, at *4 (E.D.N.Y. Sept. 28, 2012) ("When assessing probable cause to arrest, police officers are likewise entitled to rely — as long as such reliance is reasonable — on information provided by other law enforcement officials, including identifications which may later turn out to be mistaken." (citing *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010))); *De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, at *7 (S.D.N.Y. Sept. 24, 2012) ("Police officers, when making a probable cause determination . . . [are] entitled to rely on the allegations of fellow police officers" and "[t]he determination of probable cause does not turn on whether the fellow officer's observations were accurate, but on

whether the arresting officer was reasonable in relying on those observations." (alterations, citations and internal quotation marks omitted)).

The Second Circuit has identified examples of reasonable and unreasonable reliance by arresting officers. An arresting officer's reliance on a statewide computer database that erroneously indicated that there was an outstanding arrest warrant for the defendant has been held to be reasonable, but an arresting officers' reliance on what they knew to be an anonymous tip to a 911 operator was held to be unreasonable. *See Colon*, 250 F.3d at 137–38.

It is unclear, however, how much information must be conveyed to an arresting officer in order for his reliance to be reasonable. An arresting officer need not have knowledge of the underlying facts establishing probable cause to make an independent determination of whether probable cause exists — it is enough that the arresting officer be told that there is probable cause for arrest. *See Crawford v. City of New York*, 477 F. App'x 777, 779 n.1 (2d Cir. 2012) ("If one officer in a police department has knowledge of facts that establish probable cause to arrest a suspect, the suspect suffers no constitutional deprivation if he is arrested by a different officer who lacks such knowledge." (citing *United States v. Valez*, 796 F.2d 24, 28 (2d Cir. 1986))); *Zellner*, 494 F.3d at 369 (The doctrine "recognizes that, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." (citations and internal quotation marks omitted)); *Panetta*, 460 F.3d at 395 ("Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." (citation omitted)); *Golphin*, 2011 WL 4375679, at *3 (holding that it was reasonable for the arresting officer to rely on facts sufficient to support probable cause communicated to him by two superior officers). In *Golphin*, the court observed

that "the law shields an arresting officer from liability if the officer relies on a fellow officer who vouches for probable cause."  2011 WL 4375679, at *2.  The court held that even if the fellow officers failed to convey all known information to the arresting officer, the arresting officer was "entitled to rely on the word of both superiors and make the arrest" because "[r]equiring [the arresting officer] to make an independent determination of probable cause would defeat the policy underlying the collective knowledge doctrine."  *Id.* at *3.  The court found that "[i]f an officer in [the arresting officer's] position could be held liable for trusting the word of his superiors, then officers would be discouraged from relying on each other during investigations, which would degrade the efficiency of law enforcement."[5]  *Id.*

### i. Johnson

Ryan told Johnson over the telephone of a possible investigation into two individuals who were "going back and forth from messing around near a car tire."  (Ryan Dep. 78:18–21; Johnson Dep. 17:14–17, 24:13–25:1.)  Ryan told Johnson to come to the Sheffield and Livonia

---

[5]  Whether an arresting officer may rely solely on the direction of a fellow officer to execute an arrest, without any additional communication that the directing officer believes the arrest is supported by probable cause, is unclear.  At least one district court in this Circuit has held that "police officers called upon to aid other officers in making an arrest are entitled to assume that the officers requesting aid have acted properly," suggesting that the arresting officer need not confirm that probable cause exists before aiding in the arrest.  *Phelps v. City of New York et al.*, No. 04-CV-8570, 2006 WL 1749528, at *3 (S.D.N.Y. June 27, 2006) (citing *Whiteley*, 401 U.S. at 568).  The First and Ninth Circuits have found similarly that arresting officers are entitled to assume their fellow officers are acting in a manner consistent with their legal responsibilities and may act according to the direction of their fellow officers.  *See United States v. Am*, 564 F.3d 25, 28 (1st Cir. 2009) (noting that officer who assisted in arrest was "entitled to assume" that his fellow officer, "who had far greater familiarity" with the arrestee, "was acting in a manner consistent with his legal responsibilities" (alteration and citation omitted)); *United States v. Ramirez*, 473 F.3d 1026, 1037 (9th Cir. 2007) ("We are satisfied that the collective knowledge doctrine includes no requirement regarding the *content* of the communication that one officer must make to another.  Where one officer knows facts constituting reasonable suspicion or probable cause (sufficient to justify action under an exception to the warrant requirement), and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment.").

area.  (Johnson Dep. 17:3–7.)  Once Johnson was nearby, Ryan told him to move in, but did not

tell him why.  (*Id.* at 19:7–25.)  Johnson, accompanied by Ward, then stopped and interviewed

Plaintiffs, asking for pedigree information.  (Ward Dep. 6:23–8:6.)  Sometime thereafter,

Prendergast approached and "cuffed" Plaintiffs.  (*Id.* at 8:5–13.)  At some point prior to

preparing Plaintiffs' arrest reports, Johnson received information from another officer that

Plaintiffs had been in possession of a firearm.  (*See* Johnson Dep. 45:5–25.)  There is no

evidence that this information had been conveyed to Johnson at the time Plaintiffs were arrested.

In addition, Plaintiffs contend that Johnson himself may have recovered the weapon.  According

to Colon, the weapon was recovered by an African-American officer who was not present at his

trial.  (Colon Dep. 203:15–21; 181:4–182:4.)  Prendergast testified at Colon's trial, (Prendergast

Dep. 115:15–19), and Johnson was the other African-American involved in Plaintiffs' arrest,

(Oral Arg. Tr. 32:8–14).

Construing the evidence in the light most favorable to Plaintiffs, a reasonable jury could

find that at the time Johnson participated in the arrest of Plaintiffs, he was not aware of the facts

supporting probable cause for Plaintiffs' arrest and had not been told that Ryan or Prendergast

had determined that probable cause to arrest existed.  Johnson had not observed any wrongdoing

by Plaintiffs and had not seen a weapon, nor had he been informed that a weapon had been

recovered.  A jury could therefore find that Johnson did not reasonably rely on any

communications from his fellow officers when participating in the arrest of Plaintiffs.  The Court

cannot find as a matter of law that Johnson is insulated from liability based on the collective

knowledge doctrine.  *See Husbands*, 335 F. App'x at 128 (officer may reasonably rely on fellow

officer's observations); *Panetta*, 460 F.3d at 395 (officer may reasonably rely on fellow officer's

determination that arrest is lawful).

Moreover, because the identity of the officer who recovered the weapon is a disputed issue of fact, a reasonable jury could conclude that Johnson did not act in reliance upon representations from fellow officers when participating in the arrest of Plaintiffs, but rather himself recovered the gun and vouched for probable cause for the arrest, thereby negating the application of the doctrine as a shield against liability. Under the circumstances of this case, the collective knowledge doctrine does not insulate Johnson from liability for claims arising from Plaintiffs' arrest. *See Golphin*, 2011 WL 4375679, at *2 ("In a chain of communication between officers, responsibility for the accuracy of probable cause remains with the officer that provided the affirmation, not the arresting officer." (citation omitted)).

### ii. Ward

Ward was driving the prisoner van with Johnson as a passenger when Johnson received the telephone call from Ryan. (Ward Dep. 5:2–11.) Johnson told Ward to proceed to the Sheffield and Livonia area. (*Id.*) Ward understood that they were going to the location "because we were conducting an investigation," (*id.* at 6:5–9), however when asked if there was "any particular reason why [he] w[as] instructed to report to that particular location at that time," Ward did not remember, (*id.* at 6:10–12). Once at the location, Ward and Johnson interviewed the Plaintiffs and obtained pedigree information. (*Id.* at 8:4–6.) At some point Prendergast "came over to us, and we placed the individuals under arrest." (*Id.* at 8:7–9.) When asked if Prendergast said or did anything when he came over to Plaintiffs, Ward and Johnson, Ward testified that Prendergast "took action . . . [h]e pretty much cuffed them up." (*Id.* at 8:10–13.) Ward did not know why Plaintiffs were being arrested and he did not recall being shown a weapon or told that a weapon had been recovered. (*Id.* at 8:14–24.) Ward did not personally observe Plaintiffs engage in any unlawful acts. (*Id.* at 4:21–23.)

Construing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find that at the time Ward participated in the arrest of Plaintiffs, he was not aware of any facts supporting probable cause for Plaintiffs' arrest, and had not been told that Ryan or Prendergast had determined that probable cause to arrest existed. He had not been told by Johnson, Ryan or Prendergast why he was at the location or why Plaintiffs were being arrested, he did not observe any wrongdoing by Plaintiffs, he never saw a weapon and he was not informed that a weapon had been recovered. A jury could find that Ward did not reasonably rely on any communications from his fellow officers when participating in the arrest of Plaintiffs. The Court therefore cannot find as a matter of law that Ward is insulated from liability based on the collective knowledge doctrine. *See Husbands*, 335 F. App'x at 128 (officer may reasonably rely on fellow officer's observations); *Panetta*, 460 F.3d at 395 (officer may reasonably rely on fellow officer's determination that arrest is lawful).

**IV.  Reconsideration Motion**

The Court denied summary judgment on Plaintiffs' failure to intervene claim at oral argument. In their submission on the collective knowledge doctrine, Defendants submit additional arguments in support of their motion for summary judgment on this claim without leave of the Court and without moving for reconsideration. (Def. Ltr. 2–3.) The Court construes Defendants' submission as a motion for reconsideration of the Court's November 8, 2013 oral decision and denies the motion because Defendants fail to identify controlling decisions or data that the court overlooked in reaching its decision. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (The standard for granting a motion to reconsider a judgment "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." (citations omitted)); *see also Lesch v.*

*United States*, 372 F. App'x 182, 183 (2d Cir. 2010) (same) (quoting *Shrader*, 70 F.3d at 257));

Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern

Districts of New York (requiring the moving party to "set[] forth concisely the matters or

controlling decisions which counsel believes the Court has overlooked").

## V.  **Qualified Immunity**

Defendants also moved for the first time in their post-oral-argument submission, for

summary judgment as to Ward and Johnson based on qualified immunity without offering any

excuse for their untimely filing.  (Def. Ltr. 3–4.)  Defendants filed their motion for *partial*

summary judgment on March 8, 2013, suggesting that Defendants considered the evidence

obtained during discovery and decided it had a proper basis for moving for summary judgment

as to some claims but not others.  In moving for partial summary judgment Defendants made

many arguments in support of their request to seek dismissal of the claims against Johnson and

Ward, including that all claims should be dismissed against them on the basis of the collective

knowledge doctrine, that the evidence failed to support a claim for unlawful search against them,

and that the malicious prosecution claim against them must fail because of the presumption of

probable cause created by the indictment and because Johnson and Ward did not initiate the

prosecution or act with malice.  (*See generally* Def. Mem.)  That Defendants decided not to

move on grounds of qualified immunity was clearly a choice.  Moreover, Defendants requested

leave and additional time to file additional legal arguments in support of their collective

knowledge doctrine motion but at no time did Defendants raise the issue of qualified immunity

prior to their supplemental filing.

The Second Circuit has clearly stated that arguments raised for the first time in reply

papers or thereafter are properly ignored.  *See Watson v. Geithner*, 355 F. App'x 482, 483 (2d

Cir. 2009) (court may decline to consider an argument raised for the first time in a reply brief);

*ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 97 n.12 (2d Cir. 2007) (same); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 n.5 (2d Cir. 2006) (same); *US Engine Prod., Inc. v. ISO Grp., Inc.*, No. 12-CV-4471, 2013 WL 4500785, at *8 (E.D.N.Y. Aug. 20, 2013) ("[A] party cannot raise arguments for the first time in a reply brief."); *Rodriguez v. Rivera*, No. 12-CV-5823, 2013 WL 5544122, at *13 n.4 (S.D.N.Y. Sept. 16, 2013) (declining to address arguments raised for first time in reply brief (citing *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)); *Vilkhu v. City of New York*, No. 06-CV-2095, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008) ("Defendants argue for the first time in their reply papers that summary judgment should be granted because the officers are entitled to qualified immunity. . . . Because defendants have raised this argument for the first time in their reply papers, I decline to consider it on this motion."); *Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 359 (S.D.N.Y. 2007) ("Arguments first raised in reply memoranda are not properly considered, and of course the same is true of arguments first raised by letter several months after reply memoranda and all other motion papers have been filed." (citation and internal quotation marks omitted)); *In re Comverse Tech., Inc.*, No. 06-CV-1849, 2006 WL 3193709, at *5 n.3 (E.D.N.Y. Nov. 3, 2006) ("Arguments raised for the first time in a reply brief are properly ignored.").

Defendants offer no argument or authority to explain why the Court should consider Defendants' untimely qualified immunity motion. The untimeliness of Defendants' argument, omitted from even Defendants' reply and not raised at oral argument, is particularly egregious, and merits disregard. However, in the interest of justice and in view of the Second Circuit's direction that the issue of qualified immunity should be decided as early as possible in a proceeding, *see Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001) ("A ruling [on qualified immunity] should be made early in the

proceedings so that the cost and expenses of trial are avoided where the defense is dispositive."),
*overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *Kennedy v. Lehman*, 328 F. App'x 16, 18 (2d Cir. 2009), the Court considers whether Johnson and Ward should be dismissed on the basis of qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dolan v. Cassella*, 543 F. App'x 90 (2d Cir. 2013) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 54, 60–61 (2d Cir. 2009)); *DiStefano v. Sedita*, No. 11-CV-1125, 2014 WL 349251, at *10 (E.D.N.Y. Jan. 31, 2014) (same); *see also Negron v. City of New York*, No. 09-CV-0944, 2013 WL 5525692, at *4 (E.D.N.Y. Oct. 4, 2013) (same); *Dowling v. City of New York*, No. 11-CV-4954, 2013 WL 5502867, at *7 (E.D.N.Y. Sept. 30, 2013) (noting that qualified immunity protects officials performing discretionary functions from liability for civil damages so long as their conduct does not violate a clearly established right (citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010))). "To determine whether qualified immunity attaches, the Court must determine: '(1) whether plaintiff has shown facts making out a violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *DiStefano*, 2014 WL 349251, at *10 (alteration omitted) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)); *see also Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York*, --- F.3d ---, ---, 2014 WL 1042164, at *4 (2d Cir. Mar. 19, 2014) ("The defendants are entitled to qualified immunity if they can establish

either that (1) a constitutional right was not violated or (2) the right was not clearly established." (citation and internal quotation marks omitted)).

Defendants argue that Johnson and Ward are entitled to qualified immunity "[b]ased on the facts relayed to Detectives Johnson and Ward by Lieutenant Ryan" on the date of Plaintiffs' arrest. (Def. Ltr. 4.) Defendants further argue that "[e]ven if the Court were to disagree as to whether the facts given to Detectives Johnson and Ward were sufficient to establish probable cause to arrest [P]laintiffs, it is clear that reasonable officers could disagree as to whether probable cause existed," therefore entitling Johnson and Ward to qualified immunity. (*Id.*) Plaintiffs argue that disputed issues of fact preclude summary judgment based on qualified immunity. (Pl. Ltr. 2–3.)

As discussed above, contrary to Defendants' argument that Ryan relayed facts to Ward to establish arguable probable cause, at the time of Plaintiffs' arrest, Ward was not aware of the facts supporting even arguable probable cause, and Ward had not been told that Ryan or Prendergast had determined that probable cause to arrest existed. Moreover, there is no evidence that at the time of Plaintiffs' arrest Ward acted pursuant to any order or direction from his fellow officers. Defendants have offered no argument or authority for the premise that Ward is entitled to qualified immunity in the absence of such knowledge or direction.

As to Johnson, there is an issue of fact as to whether he recovered the weapon on the scene.[6] The recovery and identification of the weapon is central to the determination of probable cause and these issues of fact concerning the weapon raise issues concerning Johnson's credibility. As such, they preclude the Court from granting summary judgment as to Johnson on

---

[6] Indeed, Johnson identified a different weapon manufacturer in the Plaintiffs' arrest reports than was identified in later evidence reports.

the basis of qualified immunity. *See Santulli v. Russello*, 519 F. App'x 706, 709 (2d Cir. 2013) ("Where the objective reasonableness of state action depends on credibility determinations, a genuine issue of material fact precludes summary judgment." (citing *Dillon v. Morano*, 497 F.3d 247, 253 (2d Cir. 2007)); *Rivera v. Madan*, No. 10-CV-4136, 2013 WL 4860116, at *11 (S.D.N.Y. Sept. 12, 2013) (denying summary judgment on qualified immunity defense because resolution of material issues of fact required credibility determinations that are the province of a jury (citing *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994) and *Hartline v. Gallo*, 546 F.3d 95, 103 (2d Cir. 2008)))); *Porath v. Bird*, No. 11-CV-963, 2013 WL 2418253, at *29 (N.D.N.Y. June 3, 2013) (denying summary judgment on qualified immunity defense because resolution of material issues of fact required improper credibility determinations); *De Michele*, 2012 WL 4354763, at *18 (denying summary judgment on qualified immunity defense because "[r]esolution of . . . Defendants' qualified immunity defense requires credibility determinations that are the province of a jury" (citing *Azrielli*, 21 F.3d at 517 and *Russo v. DiMilia*, 894 F. Supp. 2d 391, 414–15 (S.D.N.Y. 2012))). Defendants' motion for summary judgment as to Ward and Johnson based on qualified immunity is denied.

## VI. Alternate Claims

At oral argument the Court directed Plaintiffs to inform the Court whether they seek to proceed with their failure to intervene claims against all Defendants. The Court also directed Defendants to respond by addressing whether Plaintiffs can present alternate legal theories to the jury — that Defendants were liable *either* for direct participation in the deprivation of Plaintiffs' constitutional rights *or* for their failure to intervene therein — or whether Plaintiffs must select a legal theory for presentation to the jury. (Minute Entry dated Nov. 8, 2013.) Plaintiffs confirmed that they wish to present alternate legal theories to the jury, recognizing that the jury

would be instructed that they could not find a Defendant liable for both direct participation and for failure to intervene.  (Docket Entry No. 48.)

Defendants argue that they cannot be liable under both theories, and Plaintiffs should not be permitted to present alternate legal theories to the jury because Plaintiffs "have had almost three years to investigate and conduct discovery . . . [and] should be able to articulate what claim they are bringing against which [D]efendant."  (Docket Entry No. 50 at 2.)  Defendants contend that each Defendant is "entitled to know what [P]laintiff[]s['] claims are so that he can adequately prepare his defense."  (*Id.*)  Defendants also argue that if Plaintiffs cannot articulate to a reasonable degree of certainty why they are bringing a specific claim against each Defendant, they should be prohibited from bringing such a claim by Rule 11(b)(2) and (3) of the Federal Rules of Civil Procedure.  (*Id.*)

As the Second Circuit has long held, a plaintiff can proceed to trial on all viable theories of recovery and submit alternative claims to the jury.  *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343 (2d Cir. 1994) ("[A] party may properly submit a case on alternative theories."); *Hughes v. Patrolmen's Benev. Ass'n of City of New York, Inv.*, 850 F.2d 876, 882 (2d Cir. 1988) (holding that a plaintiff may plead legal claims in the alternative and present both theories to a jury); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-05724, 2009 WL 890063, at *26 n.24 (S.D.N.Y. Mar. 31, 2009) (finding that although the plaintiff could not recover damages under both of her theories of recovery, "this is not a basis for denying Plaintiff the opportunity to proceed to trial on all viable theories of recovery" (citing *Hughes*, 850 F.2d at 882)).  The Court will permit Plaintiffs to present all viable theories of recovery to the jury.

**VII.  Conclusion**

For the foregoing reasons, the Court denies Defendants' motion for summary judgment

as to Ward and Johnson.

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: April 2, 2014
       Brooklyn, New York